**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x

**UNITED STATES OF AMERICA**

       **-against-**                    **17 Cr. 54 (NRB)**

**SEAN PETER,**

                **Defendant..**

-------------------------------------------------------x

## SENTENCING MEMORANDUM ON BEHALF OF SEAN PETER

### ATTORNEYS FOR SEAN PETER

**BOBBI C. STERNHEIM, ESQ.**         **RUSSELL NEUFELD, ESQ.**
**ALEX S. HUOT, ESQ.**              **99 Hudson Street - 8th Floor**
**Law Office of Bobbi C. Sternheim**    **New York, NY 10013**
**33 West 19th Street – 4th Floor**      **646-613-8359**
**212-243-1100**

# LAW OFFICES OF BOBBI C. STERNHEIM

212-243-1100 • Main                                    33 West 19th Street - 4th Floor
917-306-6666 • Cell                                       New York, New York 10011
888-587-4737 • Fax                                          bc@sternheimlaw.com

August 5, 2019

Honorable Naomi Reice Buchwald
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

Re: *United States v. Sean Peter*
17 Cr. 54 (NRB)

Dear Judge Buchwald:

Imagine driving home and seeing two masked men brandishing guns at the door and window of a home.  Imagine that was the home of your brother – or anyone whose wellbeing concerned you – family, friend, neighbor. Imagine seeing those two armed, masked men leave the premises and then return in the same direction, as if heading back to that home.

Imagine confronting those two men, individually, and admonishing them not to make that second attempt – not to even think about doing that.  Imagine one of those men pointing his long-barreled revolver at your head and pulling the trigger once, twice, possibly three times in a failed attempt to kill you.  Imagine how relieved you would be and then how angry and revengeful you would feel.

Imagine seeing two men that looked like this prowling the neighborhood that you live in. Imagine seeing two men that looked like this at the entrance to your brother's home.

No need to just imagine - this is what one of them looked like that very night:



That's Brian Gray in Bloods attire giving a gang symbol, masked as he was on the night he and Martinez prowled Olinville Avenue, attempted to rob Shane Peter, and then Martinez tried to shoot and kill Sean Peter. Gray proudly posted this picture on his Facebook page.

The government pulled the wool over the eyes of the jury. The government spun a theory that when Sean Peter saw two armed masked men - Gray and Martinez - at the Bronx home of Shane Peter, located at 3233 Olinville Avenue, the very street leading to Sean Peter's home on Lester Street, Sean Peter was on security surveillance, guarding the marijuana and drug proceeds of a drug conspiracy. This theory that the government knit together lacks the necessary thread to hold it together – proof.

The fact that one of these men attempted to kill Sean Peter by pointing a gun at his head and pulling the trigger more than once is proof that the shooting resulting in the death of Grey was in retaliation for the attempted murder of Sean Peter. Had Sean Peter been on drug conspiracy security surveillance, one would expect he would have pulled a gun on the masked men and showed power and strength. He did not, because he was not actualizing the role that the

government has theorized. On the contrary, while in his neighborhood heading home, Sean Peter observed something dangerous and disturbing in the vicinity of his brother's home and responded as a concerned brother and member of the community.

This homicide does not rise to the level of a federal offense. This homicide should have been prosecuted in Bronx Supreme Court. Imagine how a Bronx jury would have viewed this case and you've likely answered the question why it wasn't prosecuted and tried in the Bronx.

The Court has discretion to sentence Sean Peter as if he had been found guilty of a state offense, and we urge the Court to do so. The facts support a shooting resulting in a death. They do not support intentional murder. There is no proof of who actually shot Gray. Like Sean Peter, Gray was shot in the arm. He was not shot in the head or directly in the heart. At best, the shooting supports manslaughter due to reckless endangerment.

This is not a case that could only be prosecuted in federal court or that needed to be prosecuted federally. It is not a violent crime in aid of racketeering or a crime that only violates federal law and necessitated prosecution in federal court. It is common for homicide offenses to be prosecuted in this District when the state is unable to support the charge, mostly because co-conspirator or accomplice testimony is required and, unless independently corroborated, is not admissible under state law. The state does not follow the co-conspirator exception to the hearsay rule. FRE 801(d)(2)(E). Under New York State Criminal Procedure, "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense." NY Consolidate Laws, CPL § 60.22 (b).

This matter could have – and should have - been prosecuted by state authorities in Bronx County Supreme Court. This case did not require long-term investigation; nor was it a federal

investigation. NYPD detectives essentially solved the case the very same day it happened. The Bronx County District Attorney declined jurisdiction over this matter and opted not to prosecute this case.  Intent on pursuing arrest and prosecution, the NYPD detective brought it to SDNY, and SDNY prosecuted on the theory of a murder in furtherance of a marijuana conspiracy.  It bears noting that it is atypical for a § 841(b)(1)(D) drug conspiracy - with a statutory maximum sentence of five years - to result in murder.

Had this case been prosecuted by the state, the penalty range would at most be an indeterminate sentence of 15 to 25 years.

Beyond "making this a federal case," federal prosecution exposed Sean Peter to the death penalty by an administration that has authorized a greater number of cases following inauguration than previous administrations during a comparable time period.  And unlike the majority of death-eligible cases that do not go beyond the U.S. Attorney's submission to Department of Justice requesting that the death penalty not be authorized, counsel for Sean Peter had to vigorously persuade DOJ not to authorize SDNY to seek the death penalty through written submission and personal appearance before DOJ's Capital Case Committee in Washington, D.C. Federal prosecution of this case was not only was not necessary, it was unnecessarily reckless and dangerous.

It bears noting that Larice Robinson, the only government witness whose testimony had direct bearing on the charged marijuana conspiracy, was **first** interviewed by the government after commencement of the trial. Without Robinson, the government's marijuana conspiracy theory would have failed and gives pause to wonder what evidence was presented to the Grand Jury to support the charged marijuana conspiracy.

There was never any dispute that a shooting resulted in a homicide.  Because of critical legal issues that have been extensively argued, and will be the focus of appeal, Sean Peter had no option but go to trial.

In light of the foregoing and the unique circumstances of this case, the Court should exercise its discretion and imposed a sentence commensurate with a state court conviction.

## MITIGATING FACTORS

In addition to the foregoing, compelling mitigating factors support a sentence below the 30-year sentence recommended by the Probation Department.

**Impaired Capacity**

Sean Peter suffers from serious neurological impairments.  A neurologist examined Sean and found that "… Mr. Peter has an active epilepsy syndrome with ongoing seizures . . . as well as significant cognitive impairments that focus on Frontal and Temporal brain dysfunction . . .Mr. Peter is a young man with marked central nervous system dysfunction. . . These impairments affect him still, and likely are a central element to his story, including the crime of which he has been accused." (*See* Exhibit A.) [1]

**Nature and Circumstances of Criminal Record**

Sean Peter's criminal record can be divided into two types of behavior. The first is non-violent behavior consisting of credit card, forged instrument and check fraud acts. These occurred on September 30, 2010, where he pled guilty to the misdemeanor of possessing the instrument of a crime, and March 3, 2014, where he pled guilty to the class E felony of attempted possession of a forged instrument.

---

[1] Report of Siddhartha Nadkarni, M.D., Assistant Professor of Neurology and Psychology, NYU School

Sean's other criminal convictions all resulted from fights he engaged in. And, as in his current case, there were aspects of provocation present in the more serious instances. It is significant that none of them involved pre-meditated violent behavior such as an armed robbery. Instead they were all the result of personnel disputes. Sean's first two criminal cases were the result of two fights with the same person at the Evander Childs High School where they were both students.  These fights occurred in 2002 and 2003. The misdemeanor assault charge from the second fight was reduced to an attempted misdemeanor assault because of the absence of physical injury. [2] Following the trial of the joined cases, two jurors made sworn affidavits stating that they believed Sean to be not guilty, that they believed he had acted in self-defense and that they had been coerced into finding him guilty. [3]

Both the assaults that he was involved in on October 19, 2003 and 13 years later on February 23, 2016, were the result of provocations - even if not rising to the level of a defense - that triggered his neurological deficits.  In the 2003 incident, Sean's then girlfriend, Shyremia Ebanks, complained to Sean that a livery cab driver, located on Sean's street, had assaulted her while physically throwing her out of his vehicle. Sean and Shyremia returned to the cab and, as Sean stated upon his arrest, "I swung at him with my fist once. He moved and picked up a stick and tried to grab my friend. I stabbed him with a pocket knife and after he grab her." [4]

In the 2016 incident, the person who was injured was repeatedly threatening Sean and a group of other people with a knife and threatening to kill Sean.  The stabbing only occurred after lengthy and repeated attempts on Sean's part to defuse the situation had failed. A female

---

[2]  Document to be provided upon request.

[3]  Affidavit to be provided upon request.

[4]  Document to be provided upon request.

eyewitness corroborated Sean's grand jury testimony.[5]  A store video shows both the length of the encounter and, in the later part, the victim threatening all the patrons in the store, including Sean, with a knife. [6]

Each of these acts occurred in the social context of an impoverished, high crime neighborhood in the Bronx, where many young people have become hyper-vigilant due to repeated exposure to violence and where, tragically, violence has become normalized. Both the middle school and high school Sean attended were subsequently shut down due to poor performance and chronic violence.

Sean Peter grew up in the Gun Hill section of the Bronx, at 654 Lester Street, where he lived most of his life. It is a three-story house, separated into apartments, which have been inhabited by different members of his paternal family. This house is located a block from Shane Peter's residence on Olinville Street. In 1999, almost 36% of families with children under the age of 18, living in the Bronx, lived below the poverty line.[7]  This compares to a nationwide poverty rate of 11.9%. [8]  As of 2011, the Bronx remained the poorest urban county in the United States.[9]  The area where Sean was raised, Bronx Community District 12, is racially segregated with the most recent census information showing that it is 65.4% Black, 27.8% Hispanic, and just .6% White.

The racial isolation of Black and Hispanic students in the Bronx, such as Sean, begins in

---

[5]  Grand Jury testimony to be provided upon request.

[6]  Store video to be provided upon request.

[7]  U.S. Census Bureau Demographic Profile: 1990 and 2000 Comparison Tables, Bronx County, NY.

[8]  *Id.*, U.S. Census Bureau.

[9]  Roberts, Sam,  *One in Five New York City Residents Living in Poverty.,* New York Times (September 22, 2011).

elementary school and continues into high school, reflecting a systemic and consistent lack of resources and opportunity for minority students in this very low-income community. The middle school Sean attended, MS 113 Richard R. Green, was closed in 2007 due to chronic problems including extreme overcrowding, violence, and lack of resources. It was ranked as one of the most dangerous schools in New York City.[10]  In 2001, the school was 68.3% Black, 27.8% Hispanic and just .6% White.[11]  Sean went on to attend Evander Child's High School in the  Bronx from 1997 to 2001.      The City closed Evander Childs in 2008 because it had been identified  as a chronically  failing  school;  suffering  from violence  and  truancy.[12] Prior to its closing, the school was made up of 100% minority students and had a graduation rate of 56%, significantly lower than the state average of 87%.[13]

**Adjustment to Incarceration**

For more than two and half years since his arrest, Sean has been detained at MDC-Brooklyn  and has demonstrated a positive adjustment to incarceration.  In addition, he has been leading a productive and helpful life by working as a meal server orderly in his housing unit and has taken two inmate education classes.

**CONCLUSION**

---

[10]   Inside Schools Review (a project of Center For New York City Affairs, The New School): MS 113, Richard R. Green School.

[11]   PSK 12. Com, Public School Ranking, MS 113 Richard R. Green.

[12]   Samuel, Tanyanika, *Department of Education Phases Out Five Low Performing Schools.* New York Daily News (June 30, 2008).

[13]   Public School Review Evander Childs High School (closed): https://wwwpublicschoolreview.com/evander-childs-high-school-profile.

It has never been disputed that a shooting occurred. It has never been contested that the shooting resulted is the death of Brian Gray. It has always been contested that the shooting and resulting homicide were in furtherance of a marijuana conspiracy.

Sean Peter was exposed to extreme provocation: In the presence of Gray, Martinez pointed a revolver at Sean's head and, with the intention of killing him, pulled the trigger two to three times.

There is no evidence that there was any intention to murder Gray.  An intention to shoot does not support an intention to kill.    The death of Gray is a fact.  But the fact of his death was not an intentional murder. Reckless endangerment resulted in the death of Gray, not a murder in furtherance of a drug conspiracy.

<div style="margin-left:auto; width:50%;">

Respectfully submitted:

Attorney for Sean Peter

*Bobbi C. Sternheim*
BOBBI C. STERNHEIM
RUSSELL NEUFELD
ALEX S. HUOT

</div>

Attachments
cc: Government Counsel

# EXHIBIT A



**Siddhartha Nadkarni, MD**
Assistant Professor of Neurology and Psychiatry
Program Director Combined Residency in Neurology and Psychiatry
Program Director Epilepsy Research Fellowship
Director Epilepsy Fellows' Clinic NYU Langone Medical Center
Director Neuroscience Curriculum Psychiatry Residency
NYU School of Medicine, NYU Langone Medical Center
223 East 34th Street, New York, NY  10016
646-558-0807 (phone) , 646-385-7166 (fax)

Russel Neufeld
99 Hudson St., # 8
New York, NY  10013

Re:  Sean **Peter**

December 4, 2017

Dear Mr. Neufeld,

I write at your request to provide you with expert consultation in the case of Mr. Sean Peter.  As such, I have reviewed records and met with and examined Mr. Peter.  I let him know the nature of the consultation and explained that no patient-doctor relationship is created during this consultation.  I am board certified in Neurology, Psychiatry, Clinical Neurophysiology, Epilepsy and Behavioral Neurology/Neuropsychiatry.

I have reviewed the following records so far:

| | |
|---|---|
| NYC Department of Education Records Evander Childs High School | Failed most classes. Cumulative Percentage 53.8% |
| New York City Public Schools Student Historical Profile Report | Poor Attendance and Poor GPA |
| Legal History FBI | Discusses Criminal History |

I had the opportunity to interview and examine Mr. Peter at the Metropolitan Detention Facility in Brooklyn on October 9, 2017:

**Identifying Data:**  34 year old right handed man.

**History of Present Illness:**  Mr. Peter's mother reported that he had seizures from infancy through age eight and was placed on phenobarbital medication.  He does not recall which type of seizures he had, nor which medication he took but does remember taking medications for them.  He has apparently had at least three seizures in the last several months.

He has no history of meningitis or encephalitis, nor any perinatal injury, but school records do indicate that he did very poorly.

He also has cognitive complaints that have been chronic, including short term memory problems and word finding problems.

**Past Medical History:**  Asthma in childhood.

**Past Surgical History:**   None

**Family History:**  Grandmother with Alzheimer's (diagnosed in 60's or 70's).  One paternal cousin with epilepsy.

**Past Psychiatric History:**  He reports drinking Alcohol as a teenager and tried Marijuana a few times then.  No other drugs.  He does report having full blown panic attacks.

**Allergies:**  None.

**Medications:**  None.

**Neural Examination:**  There is mild culpocephaly.

Mental Status:  Montreal Cognitive Assessment – 24/30 (missed hands of clock, 4 serial 7's, and 3 on delayed recall).

Cranial Nerves:  Extraocular movements intact, pupils equally round and reactive to light. There is a mild decreased in the right nasolabial fold.

Motor:  There is normal bulk and tone.  Strength is 5/5 throughout, and there are normal fine finger movements.  There are no adventitious movements.

Sensory:  Normal pinprick, light touch, position, vibtration, and cortical sensation.

Coordination:  Normal in bilateral upper and lower extremities.

Romberg:  negative.

Gait:  Normal Tandem Gait.

There are no Frontal Release signs on this exam.

Reflexes:  On the right side he is 1+ at the biceps, triceps, brachioradialis, and ankle reflexes and 2+ at the right knee.  On the left side he is 2-2+ throughout, but for 2++ at the left knee.

Toes:  downgoing on the right and equivocal on the left.


**Impression:**  Mr. Peter suffers from epilepsy dating back to a very young age.  He appears to have ongoing regular epileptic seizures, for which he is neither being worked up, nor treated. He also appears to have significant cognitive dysfunction, evidenced by both his history and his examination.  There is further evidence of frontal and temporal lobe dysfunction on his examination.

After initially interviewing and examining him, it was warranted to work him up for his evident cognitive impairments and for his epilepsy.  In an effort to investigate these issues I had requested the following work-up:

    1.) Prolonged Video Encephalographic monitoring.
    2.) Magnetic Resonance Imaging of the brain without contrast, with epilepsy protocol
    3.) Neuropsychological Testing.
    4.) Functional Neuro-Imaging (Positron Emmission Tomography or "PET" scan of his
        brain).

This initial work-up has not occurred yet, so please accept this as a very preliminary report.  So far, I am convinced that Mr. Peter has an active epilepsy syndrome with ongoing seizures, one that has not been investigated nor treated, as well as significant cognitive impairments that focus on Frontal and Temporal brain dysfunction, and for which we find evidence on examination and in history.   Mr. Peter is a young man with marked central nervous system dysfunction that requires inquiry and investigation.  The nature of these deficits and their cause are likely multifactorial, including issues in brain development as well as acquired head injuries.  These impairments affect him still, and likely are a central element to his story, including the crime of which he has been accused.  Further assessment will be possible once the above preliminary work-up is concluded.

Thank you much for allowing me to participate in his case.  Please feel free to call me should you have any questions.

Sincerely,

Siddhartha S. Nadkarni, M.D.
Assistant Professor, Neurology and Psychiatry
NYU School of Medicine