```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
UNITED STATES OF AMERICA,

        - against –

SEAN  PETER,  a/k/a  "Huggie,"  JASON            MEMORANDUM AND ORDER
CAMPBELL,  a/k/a  "Holiday,"  a/k/a
"Fish," and STEVEN SYDER,                           17 Cr. 54 (NRB)

                Defendants.
----------------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

On December 11, 2018, defendants Sean Peter, Jason Campbell, and Steven Syder were convicted by a jury on all counts arising out of their October 2, 2012 murder of Brian Gray in furtherance of a narcotics conspiracy. Now, nearly five years after their initial arrest, and following trial, extensive post-trial briefing on motions for a new trial and acquittal, and a 54-page opinion from this Court denying those motions, which the Second Circuit affirmed, defendants have filed a second motion for a new trial. This motion is based on purported "new evidence" in the form of an affidavit from Sean Peter's brother, Shane Peter (also known as, and hereinafter, "Streets"). For the following reasons, the motion is denied.

I.  **Background**

The Court presumes familiarity with the facts of this case, which have been recounted in detail in prior opinions from this Court and from the Second Circuit Court of Appeals. See United

1

States v. Peter, No. 17 Cr. 054 (NRB), 2019 WL 2918226 (S.D.N.Y. July 8, 2019), aff'd sub nom. United States v. Campbell, 850 F. App'x 102 (2d Cir. 2021).

In brief, defendants Sean Peter, Jason Campbell, and Steven Syder were each convicted after a jury trial of all three counts charged in a January 2017 indictment: (1) conspiracy to distribute and possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(D); (2) murder through the use of a firearm during and in relation to a narcotics conspiracy, in violation of 18 U.S.C. § 924(j); and (3) possession of a firearm that was discharged during and in relation to a narcotics conspiracy, in violation of 18 U.S.C. § 924(c)(1)(A)(iii).

At trial, the Government presented evidence that the defendant's murder of Brian Gray was in retaliation for an attempted robbery of Streets's "Stash House," an apartment where he stored marijuana. It was uncontested that both Julian Martinez, who testified at trial, and Gray tried to rob the Stash House, but were confronted by Sean Peter. Tr. at 515-16, 526, 530; Peter, 2019 WL 2918226, at *11. Martinez testified that he attempted to shoot Peter, but his weapon malfunctioned, and Martinez and Gray thereafter ran away and abandoned the plan to rob the Stash House. Peter, 2019 WL 2918226, at *11.[1] Approximately two weeks after

---

[1] During trial, Peter's attorney did not dispute this account, and indeed, referenced these events as facts in his opening and closing statements. Tr. 49-51, 825-830

2

the attempted robbery, on October 12, 2012, the defendants tracked down and murdered Brian Gray.  Defendants' participation in the murder was demonstrated at trial through eyewitness testimony and by surveillance video.  Id. at *11-*12.  Following the murder, defendants were driven to a hospital in New Jersey, where they gave coordinated false exculpatory statements.  Id. at *12.  Law enforcement recovered a black duffel bag from the van that transported the defendants to the hospital and found it to contain, inter alia, more than a pound of marijuana, a digital scale, hundreds of Ziploc baggies, $3,674 in cash, three different kinds of ammunition (including spent shell casings) matching the types found at the scene of the fatal shooting of Brian Gray, and a cellphone belonging to one of the other shooting victims.  Id. at *3.

    Defendants were subsequently arrested, and following a jury trial, convicted.  Defendants then moved for a new trial and an acquittal.  ECF No. 117.  This Court denied those motions on July 8, 2019, ECF No. 148, and sentenced defendants, ECF Nos. 166-67, 169.  Defendants then appealed their convictions and this Court's judgments. ECF Nos. 171, 173, 175.  On April 8, 2021, the Second Circuit affirmed this Court's judgments and the mandate was transmitted to this Court on July 26, 2021.  ECF No. 181.  On August 13, 2021, defendants filed the instant motion for a new

trial.  Memorandum of Law ("Motion" or "Mot."), ECF No. 182.  The motion was fully briefed on October 5, 2021.  ECF No. 185.

Now, almost five years after his brother's arrest on a capital charge — an event at which Streets was present, see Mot. at 6 — Streets has submitted an affidavit in support of a so-called "pro se" motion for a new trial (the "Affidavit" or "Aff.").[2]  Streets provides no explanation for his considerable delay in presenting his account.  Likewise, defendants do not explain why this defense, which goes to the heart of the case, was not explored before or during trial, despite the fact that defendants were each represented by two highly experienced attorneys.  Streets's substantive claims relating to the merits of this case are also confusingly cryptic.  First, Streets claims that he knows who attempted to rob his apartment, where he stored marijuana, in September 2012 and that Brian Gray was not one of the participants in the attempted robbery, but he does not disclose the identity of the would-be robbers.  Aff. ¶ 3.[3]  He also claims that he is "aware of what precipitated the murder of BRIAN GRAY," —again, failing to disclose any specifics — and that he would have stated at trial that the murder was not related to the attempted robbery.  Id. ¶

---

[2]   While this Court considers this motion under the more lenient pro se standard, the Court also notes that the briefing for the instant motion is of a markedly different caliber and style than the other pro se motions that this Court has received in this matter.
[3]   Streets admits that he was a marijuana dealer and stored marijuana in his apartment.  Aff. ¶¶ 1-2.

4

7. Finally, Streets states, without further elaboration, that the defendants were not members of his marijuana conspiracy.  Id. ¶¶ 4-5.

## II. **Legal Standard**

Rule 33 vests a court with broad discretion to "grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33.  But motions for such relief "are granted only in extraordinary circumstances, where a court is left with a real concern that an innocent person may have been convicted."  United States v. Pauling, 256 F. Supp. 3d 329, 339 (S.D.N.Y. 2017) (internal quotation marks and citations omitted), aff'd, 924 F.3d 649 (2d Cir. 2019).  To merit a new trial based on a claim of newly discovered evidence, "the burden is on the defendant to satisfy five elements: (1) that the evidence is newly discovered after trial; (2) that facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) that the evidence is material; (4) that the evidence is not merely cumulative or impeaching; and (5) that the evidence would likely result in an acquittal."  United States v. James, 712 F.3d 79, 107 (2d Cir. 2013) (internal quotation marks and citation omitted).  "It is only when it appears that an injustice has been done that there is a need for a new trial 'in the interest of justice.'"  United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992).

In considering a Rule 33 motion, "motions based solely upon affidavits are disfavored because the affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations." United States v. Bout, 666 F. App'x 34, 38 (2d Cir. 2016) (quoting Herrera v. Collins, 506 U.S. 390, 417 (1993)). "Trial judges 'must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses . . . . It is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment.'" United States v. Carpenter, 520 F. Supp. 3d 290, 292 (E.D.N.Y. 2021) (quoting Sanchez, 969 F.2d at 1414 (internal citations omitted).

### III. Discussion

Streets makes three claims in his affidavit: first, that none of the defendants was a member of his marijuana conspiracy, second, that Brian Gray did not rob his Stash House, and third, that Gray's murder was not in retaliation for the attempted robbery. Considering each claim in turn, we find that the affidavit does not satisfy the elements of the Second Circuit's five-factor test.

**A. Streets's Affidavit Does Not Provide Evidence that Would Likely Result in An Acquittal**

**1. Defendants' Membership in the Marijuana Conspiracy**

Streets's first claim, that defendants were not members of his marijuana conspiracy, is thoroughly contradicted by the

6

extensive evidence presented at trial.  At the outset we note that this issue was extensively litigated both at trial and in post-trial briefing.[4]  A jury, this Court, and the Second Circuit Court of Appeals have all already found that the evidence supported the conclusion that defendants were members of the conspiracy.  See, e.g., Campbell, 850 F. App'x at 104-05 (summarizing evidence of defendants' participation in the conspiracy, and holding that there was sufficient evidence for a jury to determine each defendant was a member of the marijuana conspiracy).

Streets's claim must therefore be weighed against the substantial contrary evidence of each defendant's participation in his conspiracy.  With respect to Peter's participation in the conspiracy, Laurice Robinson, who drove the van that transported defendants to New Jersey, testified that if he needed to find Streets to purchase marijuana, he would call Peter, and Peter would either connect him with Streets or sell him the marijuana himself. Peter, 2019 WL 2918226, at *13.  Similarly, Peter's conduct in confronting Martinez and Gray during their attempted robbery "could have readily been construed by a reasonable jury as evidence of his work as security detail or 'protective muscle' for the conspiracy."  Id. at *14.

---

[4]     Defendants' participation in the marijuana conspiracy – Count One of the indictment – was a necessary predicate to their convictions on Counts Two and Three of the indictment.

7

Likewise, Campbell sold marijuana to an undercover officer half a block away from Streets's Stash House. Id. When the authorities returned to arrest him a short while later, they found him standing directly in front of the Stash House, together with Streets, who was in possession of both a joint and "loose marijuana." Id. As we previously stated, "Campbell thus dealt marijuana in the territory of a well-known marijuana-distribution organization, in direct proximity to its leader, with whom he immediately thereafter loitered at the organization's home base. Accordingly, the jury was directed to the straightforward inference that Campbell had been dealing marijuana . . . with Streets[.]" Id. !

Syder's membership in the conspiracy was not established prior to the murder. However, "there still existed sufficient evidence -- including the evidence that it was Campbell and Syder who first identified Gray on the street and set in motion the events that culminated in his shooting -- for the jury to infer that they knew that the murder[ ] [they] performed was in furtherance of the drug conspiracy." Id. at *16 (internal quotation marks and citation omitted) (alteration in original). Moreover, in addition to the evidence of Syder's role in Brian Gray's murder, the Government introduced evidence that Campbell and Syder shared a single cell phone. Id. at *17.

8

Finally, additional evidence supported each defendant's membership in the conspiracy in the form of the black duffel bag seized from the van in which defendants drove to the New Jersey hospital. As we previously stated, "the defendants' comingling of additional contraband with the ammunition unquestionably connected to all three of them in the single bag that they took with them on their joint flight supported the inference that they understood the bag's contents to be part of an integrated criminal enterprise." Id. In sum:

> From their initial scouting and group stalking, to their retrieval of firearms from a common stash, to their synchronized battle charge, to their return to a single safe house, to their re-stashing of their weapons together, to their joint flight with the evidence of their misdeeds, all the way through their coordinated lies to law enforcement -- their collaboration was seamless and their co-investment manifest. Far from a half-hearted or passive undertaking on the part of any defendant, the execution thus smacked of a joint business venture in which each defendant "had a stake."

Id. at *16. Streets's affidavit makes no effort to distinguish or explain away any of this evidence. Thus, when weighed against the substantial evidence to the contrary, Streets's naked assertion that defendants were not members of the conspiracy does not provide a reason to disturb the jury's verdict and falls far short of evidence that would support an acquittal.

9

### 2. Brian Gray's Attempted Robbery of the Stash House

Similarly, Streets's claim that Brian Gray did not attempt to rob his Stash House does not make it likely that defendants would be acquitted. It was uncontroverted, both at trial and in the prior post-trial briefing, that Gray attempted to rob Streets's Stash House. Moreover, Julian Martinez testified at trial about his assistance in the attempted robbery and described Gray's participation in the attempt. In particular, Martinez testified that he and Gray planned the robbery and approached the Stash House with the intent to rob it, that he was confronted by Peter before the robbery, and that he attempted to shoot Peter before fleeing the scene. Id. at *8, *11. Martinez was subject to cross-examination by defendants' lawyers. At no point did Martinez suggest that Gray was not present at the attempted robbery. In contrast, Streets provides no support for his claim that Gray did not attempt to rob the Stash House and does not attempt to account for Martinez's testimony.

### 3. Gray's Murder Was in Retaliation for the Attempted Robbery

Finally, Streets claims that Gray's murder was not in retaliation for the attempted robbery. However, the evidence that defendants murdered Gray was "unusually overwhelming." Id. at *7. As we previously stated, the "obvious link" between the attempted robbery and the murder "was laid bare for the jury: days after

10

Peter caught Gray attempting the robbery, Peter's codefendant friends either spotted Gray by chance or deliberately located him and immediately thereafter joined up with Peter to stalk and execute him." Id. at *15. A jury was thus directed to the reasonable inference that at least one motive for the robbery was that it was in furtherance of the narcotics conspiracy.[5] Moreover, Streets does not provide any alternative explanation for Gray's murder – he offers just a cryptic tease that he believes he knows why Gray was murdered, but has decided not to inform the Court of his theory. Streets's unsupported opinion is not evidence and does not make it likely that the defendants would be acquitted at a new trial. Accordingly, defendants' motion fails.

### B. The Affidavit Is Not "Newly Discovered"

Further, defendants' motion also fails for the independent reason that they have not demonstrated that the affidavit was

---

[5]  We previously noted that the defendants' argument that their murder of Gray was based on personal reasons unrelated to the marijuana conspiracy lacked a foundation in the record. Specifically, we noted that:
> Insofar as the defendants would have had the jury believe that Campbell and Syder were willing to commit a premeditated murder in furtherance of Peter's personal vendetta as a matter of friendship, the absence of evidence in the record reflecting such a close social relationship between the defendants or an inclination shared by Campbell and Syder to take such extreme measures in the ordinary course of their personal lives renders that notion entirely speculative. But it was wholly reasonable for the jury to instead infer, in light of the targeting of only Gray, that the defendants -- particularly the two who were shown through pre-murder evidence alone to have been members of the conspiracy that was run out the stash house that Gray had tried to rob -- killed (an act hardly aberrant in the drug business) to protect their livelihoods from past or future rivals.

Peter, 2019 WL 2918226, at *16.

11

"newly discovered" within the meaning of Rule 33. Defendants argue that the affidavit is newly discovered because it was created after their trial. See, e.g., Mot. at 6 ("The newly discovered evidence here – the declaration of SHANE PETER, dated August 9, 2021 – did not exist at the time of trial, and was therefore not discoverable until after its creation and existence."). This does not suffice. "To justify the extraordinary relief authorized by Rule 33, the evidence must not simply be 'newly discovered' by defendant; rather, the defendant must demonstrate that such evidence was effectively undiscoverable at the time of trial." Carpenter, 520 F. Supp. 3d at 293; see also United States v. Owen, 500 F.3d 83, 89-90 (2d Cir. 2007) ("One does not 'discover' evidence after trial that one was aware of prior to trial. To hold otherwise stretches the meaning of the word 'discover' beyond its common understanding.") (emphasis in original).

Streets's marijuana conspiracy and the defendants' participation in it were central at trial. If, contrary to the evidence, defendants were not in fact members of that conspiracy, they would have known that Streets could testify to that fact. See Bout, 666 F. App'x at 38 (holding that a declaration stating the defendant never contacted a declarant is not "newly discovered" evidence because if defendant actually never contacted declarant, "he would have known that before trial, and he would have known that [declarant] could so testify.").

12

Instead, it appears that defendants made the strategic decision not to call Streets. Having made that decision, defendants must live with it. "[I]f the reason that testimonial evidence was unavailable at trial was the defendant's failure to call a witness that he knew could provide exculpatory testimony, a new trial on the basis of newly discovered evidence would not be warranted." United States v. Forbes, 790 F.3d 403, 409 (2d Cir. 2015); see also United States v. Taylor, No. 10 Cr. 268 (DLI), 2016 WL 4734600, at *5 (E.D.N.Y. Sept. 9, 2016) ("Defendant made these choices freely upon the advice of competent counsel. As such, the law does not entitle him to revisit these decisions, even if he now believes he should have made different ones."), aff'd, 802 F. App'x 604 (2d Cir. 2020). Defendants have therefore not satisfied the first prong of the Second Circuit's test.

### C. Defendants Have Not Alleged Facts from Which the Court Can Infer Due Diligence

Further, defendants totally fail to satisfy the requirement "that facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence." James, 712 F.3d at 107. No such facts are presented here. In fact, defendants' papers are completely silent as to why the testimony set forth in this affidavit is only being introduced now. Similarly, defendants also fail to explain what steps, if any, they took to secure Streets's testimony before trial. Where

13

defendants have "offered no evidence that [they] attempted to call or depose [a declarant]" they "thus failed to exercise due diligence [under Rule 33] in obtaining [the declarant's] testimony." Bout, 666 F. App'x at 38 (2d Cir. 2016). Defendants have accordingly failed to establish the second element of the test for a new trial.

## IV. Conclusion

In sum, Streets's affidavit amounts to nothing more than "too little, too late." Its unsupported assertions are not a reason for this Court to reopen this case, which was argued at trial by no fewer than six experienced and diligent lawyers for the defendants and has already been extensively litigated in post-trial briefing. For the foregoing reasons, the motion for a new trial is denied.[6] The Clerk of Court is respectfully directed to terminate the pending motion at ECF No. 182.

**SO ORDERED.**

Dated:   New York, New York

July 7, 2022

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[6] Defendants also request the appointment of new CJA counsel and a bail hearing. Defendants have shown no legal basis for bail. Further, defendants have no right to appointed counsel. See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). For the foregoing reasons, they have failed to demonstrate that

14

---

the interests of justice require the appointment of counsel. <u>See</u> <u>Hodge v. Police Officers</u>, 802 F.2d 58, 61-62 (2d Cir. 1985)).  Their request is therefore denied.

Defendants (pro se)

Sean Peter

Jason Campbell

Steven Syder

A copy of the foregoing Memorandum and Order has been mailed to:

Sean Peter, #78650-054
USP Canaan
P.O. Box 300
Waymart, PA 18472

Jason Campbell, #70954-054
USP Beaumont
P.O. Box 26030
Beaumont, TX 77720

Steven Syder, #78651-054
FCI Ray Brook
P.O. Box 900
Ray Brook, NY 12977